**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| SCAN TOP ENTERPRISE COMPANY, LTD, et al., | ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION |
| v. | ) ) | Case No. 14-2514 |
| STEPHEN P. LARSON, | ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM AND ORDER**

Plaintiffs Scan Top Enterprise Company, Ltd. ("Scan Top"), Chuan-Chih Chang, and Chin-Ming Yang filed this action on October 9, 2014, against defendant Stephen Larson ("defendant" or "Larson"). Plaintiffs bring state law claims for breach of contract, breach of fiduciary duty, tortious interference with prospective economic advantage, and fraud. Plaintiffs' claims stem from defendant's execution of certain contracts while he was president of STNA, Inc. ("STNA")—contracts plaintiffs allege defendant was not authorized to execute. On October 30, 2014, defendant filed his answer and a counterclaim against plaintiffs for abuse of process. The case is now before the court on plaintiffs' Motion for Partial Summary Judgment (Doc. 47) and defendant's Motion for Partial Summary Judgment (Doc. 45).

**I. LEGAL STANDARD**

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A "genuine" factual dispute requires more than a mere scintilla of evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the initial burden of showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477

U.S. 317, 323 (1986). In making the summary judgment determination, the court must view the evidence and reasonable inferences in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). However, the nonmoving party may not rest on the pleadings but must set forth specific facts. *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990). Ultimately, the court evaluates "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 252.

## II. FACTUAL BACKGROUND

Scan Top is a Taiwanese corporation that manufactures windshield wiper blades for automobiles. STNA was a distributor for Scan Top in the United States. The shareholders of STNA were plaintiff Chang, plaintiff Yang, and defendant Larson. Larson also was an employee of STNA and served as the company's president.

Pursuant to STNA's 2009 bylaws, Larson was required to obtain the consent of the board of directors or shareholders of STNA before entering into any transaction that could exceed $10,000. Notwithstanding this, Larson, on behalf of STNA, entered into a supply agreement with Sears ("Supply Agreement"). The Supply Agreement was a transaction that exceeded $10,000, and Larson did not obtain the consent of the board of directors or shareholders before entering into the Supply Agreement.

As a result of Larson's unauthorized execution of the Supply Agreement, Chang, Yang and Larson executed an Agreement Between Shareholders and Directors ("Shareholder Agreement") on June 28, 2010. The parties agreed "to modify the authority of the President/CEO of [STNA] to remove any authority from that position to financially obligate the Company. This includes but is not limited

to executing contracts for the Company . . . or for any other matter that would have a financial impact on the Company . . . ." (Doc. 48-8 at 1.) Thus, all financial commitments of STNA were to be brought to the board of directors and approved by a majority of the board. (*Id.*) Also, the parties amended STNA's company bylaws "to reflect that the President/CEO of [STNA] shall have no authority to financially obligate the Company on any business matter, including but not limited to executing contracts for the Company . . . or for any other matter that would have a financial impact on the Company . . . ." In addition to stripping all authority Larson had to financially bind STNA, the Shareholder Agreement also provided that, upon Larson's ongoing compliance with the Shareholder Agreement, "all prior actions related to . . . the execution of the contract with Sears/Kmart and any other matter previously brought to the attention of Larson will be forgiven." (*Id.* at 3.)

After Chang, Yang and Larson executed the Shareholder Agreement and amended STNA's bylaws, Larson executed eight contracts with Sears (the "Sears Contracts")—five Subsidy Program Agreements and three Vendor Allowance Tracking System Agreements. In addition, on January 7, 2011, Larson entered into an Assignment and Assumption Agreement ("Assignment Agreement") with Sears, STNA and Winplus North America, Inc. ("Winplus"). Pursuant to the Assignment Agreement, Winplus agreed to purchase STNA's assets, including STNA's rights under the Sears Contracts. However, under the Assignment Agreement, STNA remained responsible for the obligations and liabilities to Sears arising prior to the date of the Assignment Agreement. These prior liabilities included obligations under the Sears Contracts. Larson executed the Sears Contracts and the Assignment Agreement without the knowledge of plaintiffs.

On February 5, 2011, the individual plaintiffs and Larson executed an Agreement Between Shareholders and Directors, wherein the individual plaintiffs and Larson consented to the assignment of assets to Winplus and agreed to wind up the affairs of STNA. In February 2011, Larson executed

an Assignment of Assets and an Assignment of Trademarks on behalf of STNA, assigning the assets of STNA to Winplus. Concurrently with the assignment of STNA assets to Winplus, Winplus entered into a Distribution Agreement and Distribution Side Agreement with Scan Top ("Distribution Agreement") to supply wiper blades under the Supply Agreement.

In August 2011, Scan Top filed an arbitration claim against Winplus for Winplus's failure to make payments under the Distribution Agreement. On September 11, 2012, the day after the parties disclosed the witnesses they intended to call at the (first) arbitration hearing, plaintiffs filed a complaint against Larson in the United States District Court for the District of Pennsylvania, Case No. 12-CV-5170-MAM ("Pennsylvania Lawsuit"). In that lawsuit, plaintiffs alleged the same causes of action against defendant that they assert in this case: breach of contract, breach of fiduciary duty, interference with prospective economic advantage, and fraud. Defendant alleges that plaintiffs filed the Pennsylvania Lawsuit to prevent him from testifying in the arbitration proceeding—allegations which form the basis of his abuse of process claim. Defendant did not testify in front of the arbitrator, and plaintiffs dismissed the Pennsylvania Lawsuit on September 28, 2012. On April 16, 2014, the arbitrator issued an award (the "Award") against Scan Top. Plaintiffs allege defendant Larson is liable for the arbitration award.

## III.    DISCUSSION

Under Kansas law, a two-year statute of limitations applies to tort claims. *Griffin v. Sec. Pac. Auto. Fin. Servs. Corp.*, 25 F. Supp. 2d 1214, 1218 (D. Kan. 1998). As such, this two-year window applies to plaintiffs' claims for breach of fiduciary duty, tortious interference with prospective economic advantage, and fraud. *See* Kan. Stat. Ann. § 60-513(a)(3) (fraud); (a)(4) (breaches of duty, torts, and "injury to rights of another").

### A. Plaintiffs' Tort Claims

Defendant argues that the statute of limitations has run on plaintiffs' tort claims. The statute of limitations does not begin to run until an "injury becomes reasonably ascertainable to the injured party." *Spicer v. New Image Int'l, Inc.*, 447 F. Supp. 2d 1226, 1234 (D. Kan. 2006) (quoting Kan. Stat. Ann. § 60-513(b)). The limitation period for fraud-based claims does not begin "until the fraud is discovered." *Kinell v. N.W. Dible Co.*, 731 P.2d 245, 247 (Kan. 1987); Kan. Stat. Ann. § 60-513(a)(3).

In its previous Memorandum and Opinion, the court questioned when plaintiffs discovered defendant's allegedly unauthorized, fraudulent actions in signing the Sears Contracts and the Assignment Agreement. (Doc. 32 at 5.)[1] At the motion to dismiss stage, the court could not determine from the face of the pleadings when plaintiffs discovered defendant's actions and noted that "if discovery in the arbitration took place (or continued to take place) after October 9, 2012, and if that is when plaintiffs learned of defendant's alleged wrongful conduct, plaintiffs' claims would be timely." (*Id.*) Conversely, if plaintiffs discovered defendant's allegedly unauthorized actions ***before*** October 9, 2012, plaintiffs' claims in this case would be untimely.

On summary judgment, defendant argues that plaintiffs learned in July 2012 that defendant had executed the contracts in question without authority and that, as a result, plaintiffs should have filed their tort claims within two years—or no later than July 2014. In support, defendant attaches as a summary judgment exhibit the complaint filed by the plaintiffs in the Pennsylvania Lawsuit. The plaintiffs in the Pennsylvania Lawsuit, who are the very same plaintiffs in the instant action, alleged in the Pennsylvania Lawsuit that they learned for the first time of defendant's conduct "[i]n July 2012,

---

[1] The court notes that plaintiffs' counsel mischaracterized the court's previous opinion by stating: "As noted by this Court in the Memorandum and Order, dated March 27, 2015, in regards to the motion to dismiss on these same statute of limitation issues, the two-year limitation period began when the arbitrator issued the award in 2014 and Plaintiffs filed this action six months later. (Doc. 32)." (Doc. 54 at 1 and 8). The court never stated that the statute of limitations on plaintiffs' tort claims commenced when the arbitrator issued the award (which may explain why plaintiffs' counsel failed to include a page citation to the Memorandum and Order in support of this statement). Rather, the court expressed concern that there may be questions of fact about when plaintiffs discovered defendant's conduct, thereby precluding a ruling on a motion to dismiss. (*Id.*)

-5-

during the course of discovery in another matter," and that they had "suffered irreparable damages" as a result of defendant's conduct. (Doc. 46-2 at 5 and 7.)

Plaintiffs filed the Pennsylvania Lawsuit on September 11, 2012. ***At least by that point***, plaintiffs knew they suffered injury; otherwise, plaintiffs presumably would not have filed suit. Moreover, in the Pennsylvania Lawsuit, plaintiffs specifically alleged that they first learned of defendant's conduct in signing the unauthorized contracts—the conduct which forms the basis of plaintiffs' tort claims—in July 2012. Thus, the tort claims plaintiffs filed in this case on October 9, 2014, are untimely.

Moreover, that plaintiffs may not have known the full extent of their damages at the time plaintiffs filed the Pennsylvania Lawsuit does not save their tort claims. Under Kansas law, the critical date for the beginning of the running of the statute of limitations is when there was ascertainable knowledge of the fact of injury sufficient to justify an action for recovery of damages, regardless of the extent. *Roof-Techs Int'l, Inc. v. State*, 57 P.3d 538, 541 (2002). The statute does not require an injured party to have full knowledge of the extent of the injury to trigger the statute. *Id.* Accordingly, even though plaintiffs may not have known the full extent of their injuries, plaintiffs presumably knew enough in September 2012 to file a lawsuit and allege that they suffered irreparable damages as a result of defendant's conduct. Indeed, plaintiffs specifically alleged that they discovered defendant's unauthorized conduct in July 2012.

Plaintiffs should have filed their tort claims by July 2014, and certainly no later than September 11, 2014. Accordingly, plaintiffs' tort claims (Counts II, III, IV, and V) are barred by the statute of limitations.

**B.     Plaintiffs' Breach of Contract Claim**

In Count I, plaintiffs allege that defendant breached the Shareholder Agreement by entering into the Sears Contracts and the Assignment Agreement without obtaining approval from the board of directors. Defendant argues that the Sears Contracts were not new financial obligations but were rather within the scope of the original Supply Agreement. In support, defendant directs the court's attention to the arbitrator's determination that the Sears Contracts were confirmations of pre-existing obligations, and not new financial obligations. (Doc. 53 at 12–14; Doc. 53-10 at 2.) Regarding the Assignment Agreement, defendant argues that plaintiffs consented to the transaction and further ratified the Assignment Agreement when plaintiffs later obtained an exclusive dealership with Winplus.

Whether a contract has been breached generally is a question of fact. *Waste Connections of Kan., Inc. v. Ritchie Corp.*, 298 P.3d 250, 265 (Kan. 2013) (citing *Bank of America v. Narula*, 261 P.3d 898 (2011); *Wichita Clinic v. Louis*, 185 P.3d 946 (Kan. Ct. App. 2008)). In these circumstances, the court cannot say as a matter of law that defendant's execution of the Sears Contracts or the Assignment Agreement were breaches of the Shareholder Agreement. While there is no question that defendant executed these agreements, reasonable persons could differ regarding the inferences to be drawn from the facts surrounding defendant's signing of these agreements and plaintiffs' conduct thereafter. These questions must be resolved by a trier of fact, thus rendering summary judgment improper.

**B. Defendant's Abuse of Process Claim**

Plaintiffs argue that they are entitled to judgment as a matter of law on defendant's abuse of process claim. Under Kansas law, defendant will have to establish the following elements for an abuse of process claim: (1) that plaintiffs made an illegal, improper, or perverted use of the process, a use neither warranted nor authorized by the process; (2) that plaintiffs had an ulterior motive or purpose in

doing so; and (3) that damage resulted to defendant. *Porter v. Stormont–Vail Hosp.*, 621 P.2d 411, 416 (1980) (citations and quotations omitted).

Defendant correctly points out that plaintiffs offer no facts in support of their summary judgment motion on defendant's abuse of process claim. Rather, plaintiffs merely argue that defendant cannot produce evidence of their motive in filing the Pennsylvania Lawsuit. Notably, plaintiffs reference a document in the argument section of their brief—a Summary of Testimony Scan Top Potential Witnesses ("Summary of Testimony"). Plaintiffs claim that this Summary of Testimony shows that they did not have an improper motive in filing the Pennsylvania Lawsuit because defendant was listed as an arbitration witness *to be called by Scan Top*. (Doc. 48 at 20.)

Curiously, however, the Summary of Testimony is dated September 30, 2013, and therefore has no bearing on whether plaintiffs had an improper motive in filing (and then dismissing) the Pennsylvania Lawsuit in September 2012.[2] The court finds that plaintiffs have failed to show the court they are entitled to judgment as a matter of law on defendant's abuse of process claim. Plaintiffs' motive is a question of fact, *Bethea v. Wells Fargo Bank, N.A.*, No. 10-1264-JAR, 2010 WL 4868180, at *4 (D. Kan. Nov. 23, 2010), and plaintiffs have failed to show that no genuine issues of fact remain. The court denies plaintiffs' motion for summary judgment on defendant's abuse of process claim.

**IT IS THEREFORE ORDERED** that plaintiffs' Motion for Partial Summary Judgment (Doc. 47) is denied and that defendant's Motion for Partial Summary Judgment (Doc. 45) is granted. Counts II, IV, and V are dismissed from this case.

Dated this 5th day of February, 2016, at Kansas City, Kansas.

s/ Carlos Murguia
**CARLOS MURGUIA**
**United States District Judge**

---

[2] Defendant argues that the September 30, 2013 Summary of Testimony was generated by plaintiffs' counsel for the second round of arbitration hearings that began in October 2013. Defendant claims that, in the 2013 hearings, Scan Top never sought to call defendant as a witness or sought to subpoena defendant's attendance.